The Dave McGaugh v. Commissioner of Internal Revenue. All right, Mr. Christensen, I think we're ready to start. Thank you. May it please the Court. Jacob Christensen for the Commissioner of Internal Revenue. Section 408 of the Internal Revenue Code provides in general that any money paid or distributed out of an individual retirement account shall be included in the gross income of the payee or distributee. The issue in this case is whether a withdrawal of $50,000 by the taxpayer, Mr. McGaugh, from his IRA in October 2011 was a taxable distribution to him. The tax court held that it was not and granted summary judgment in favor of the taxpayer based on its conclusion that taxpayer was acting as a mere agent or conduit of the custodian, Merrill Lynch, in withdrawing those funds from his IRA and using them to purchase stock from a third party. Summary judgment was inappropriate because the taxpayer failed to establish that there was a lack of a genuine dispute with respect to that factual question, whether he was acting as a mere conduit or agent for Merrill Lynch. I was going to probably think along the same lines. The regulation that governs our review states that we review tax court decisions in the same manner and to the same extent as decisions of district courts and civil actions try without a jury. Why doesn't this limit our review of factual findings made below for clear error? And one of the reasons I ask is to determine whether there's any deference owed to the tax court's interpretation of the Merrill Lynch email. So what's the commissioner's position? The review by the court is a de novo review because this comes to the court in the context of the summary judgment that was granted to the taxpayer. So it's subject to plenary review by the court because it's in that context of summary judgment. And the record is before the court. And so in that regard, it's my understanding that no deference is owed to factual findings of the tax court. In fact, the court should be free. When we start from scratch, you mean it means from scratch. It doesn't mean deference to anything that happened until now. That's my understanding, Your Honor. It's de novo review. Okay. We know your position. Judge DiGiulio. So before you even get to the question of agent or a conduit, how did Mr. McGaugh control these funds such that you even need to get to that second step? The first point I'd like to make is that it is irrelevant whether Mr. McGaugh was an actual receipt of the funds from his IRA. Taxpayer concedes that the doctrine of construction receipt applies in this context, and the tax court acknowledged that as well. The second point that I would make is that unless Mr. McGaugh was acting as an agent or a conduit for Merrill Lynch, he plainly was in constructive receipt of the funds. And the reason is that he had complete control. He would have had complete control over the funds at the time of the withdrawal. How is that? There's no dispute that Mr. McGaugh did not have the ability to instruct Merrill Lynch to distribute the $50,000 directly to himself if that had been his desire. The fact that he instead directed Merrill Lynch to wire the funds to a third party is not relevant with respect to his unfettered command and control over those funds. He could have had the funds issued to himself directly. Therefore, for that reason, because he had complete control over the funds, he was in constructive receipt of those funds unless he was acting as a mere agent or conduit for Merrill Lynch. And so that brings us to the critical question on which the problem is. that he was under control of those funds. And your argument is not that because he received the stock certificate, he had control over that asset. I would agree with that. The focus is that he had control over the funds at the time of the withdrawal, and the fact that he directed them to be sent to a third party is not relevant. At that time, he had constructive receipt. So the fact that the stock certificate was improperly titled is of no consequence? That is correct, Your Honor. And just to emphasize that point, I think the Supreme Court's decision in Corliss v. Bowers would support that conclusion with respect to constructive receipt. The Court stated that if a man disposes of a fund in such a way that another is allowed to enjoy the income which is in the power of the first to appropriate, then the income may be taxed to him as his income. And that's the essence of constructive receipt. So if that's then the issue, how do you distinguish this case from Ansara? Ansara is distinguishable because in that case, the Court found that the taxpayer was acting on behalf of the custodian. The Court found expressly that the taxpayer was acting as the agent of the custodian, which is consistent with the custodian's later acceptance of the stock as an asset of the IRA. In this case, I'll discuss more. There's substantial evidence indicating the taxpayer was not acting as an agent or custodian of Merrill Lynch, including the fact that Merrill Lynch ultimately refused to accept the stock as an asset of the IRA. But the point I'd like to make is that- Is that because they received it more than 60 days after the titling of the stock? I mean, what was the reason they didn't accept it? The record does not definitely answer that question, Your Honor. Because of the posture of this case, the summary judgment case, the burden was on the taxpayer here, who was also not only the moving party, but the party that bore the ultimate burden of proof with respect to this issue, whether he was acting as an agent or conduit. It was incumbent upon the taxpayer to cite evidence to support his claim and also to demonstrate that the record was so one-sided as to rule out a prospect of a finding in favor of the commissioner on that issue. The taxpayer here didn't provide any evidence in the tax court that he was acting as an agent or as a conduit for Merrill Lynch. There are no affidavits from Merrill Lynch, and the taxpayer's own declaration doesn't even claim that he was acting on Merrill Lynch's behalf. The cases that we've cited in our reply brief, respecting where a taxpayer has been held to be a conduit for another party, all involved an agreement between the parties that effectively required or obligated the taxpayer to promptly transmit the funds received to another party. Again, in this case, there's no evidence that there was ever such an agreement between taxpayer and Merrill Lynch that would have obligated the taxpayer to promptly transmit the IRA funds to the third party for the stock purchase in this case. So along those lines, I guess, in terms of burden, do you believe that it's Mr. McGaugh's burden to show evidence that this was not an impermissible investment? Who has the burden to show whether or not this was a permissible investment? That would be Mr. McGaugh's burden. He would have to establish both that there was an agreement under which he was acting as an agent or a conduit for Merrill Lynch, which would kind of go along those lines. If the investment is not a permissible investment, that suggests that he was not acting as an agent or conduit for Merrill Lynch. Do you think there's an absence of evidence on that issue, or do you believe that the evidence before the court is sufficient to demonstrate that the investment was, in fact, impermissible? There is evidence from which a reasonable inference can be drawn that the investment was impermissible, which is that in the first place, Merrill Lynch, although requested by the taxpayer to purchase the stock from the third party, refused to do so. Secondly, Merrill Lynch thereafter refused to accept the stock as an asset of taxpayers IRA. In addition, we have the 2014 email in which Merrill Lynch specifically states that the purchase of the stock was not done via Merrill Lynch, but instead that there was a distribution. Not only is there a lack of evidence that Mr. McGaugh was a mere conduit for Merrill Lynch, but there is evidence in the record from which a strong inference can be drawn that he was not acting as an agent. Speaking of the email, isn't there a reasonable, or could there be a reasonable reading of the email from Merrill Lynch that the IRA's policy would have allowed for the stock to have been held by the IRA? At this point, Your Honor, I wouldn't dispute that. My response would be that that is not the only plausible or reasonable interpretation of the email. As we explained in our reply, and I actually think it goes the other way, Merrill Lynch repeatedly stated that there had been a distribution in October of 2011, and that the stock purchase was not done via Merrill Lynch. Merrill Lynch's comments with respect to the need to redeposit the stock within 60 days is a clear reference to the rollover provisions of the code, under which, where there has been a distribution, a taxpayer is not required to include that money in income if the money is placed back into a qualified retirement plan within 60 days. So Merrill Lynch's comments in that respect, let me back up. So the rollover provisions only become relevant when there has, in fact, been a distribution, which is consistent with Merrill Lynch's stated position in the email that there had been a distribution. Merrill Lynch was merely explaining in the email that if taxpayer wished to avoid having to include that income in gross income, that he would have had to have complied with the rollover provisions and return the stock within 60 days. The taxpayer failed to do that. So those comments would be contrary. I mean, the contrary inference that taxpayer seeks for this court to draw is that there was no distribution at all, and instead, taxpayer merely acted as a conduit. And that is directly contrary to Merrill Lynch's statement that taxpayer, that the stock purchase was not done via Merrill Lynch. If Merrill Lynch had thought this was a distribution initially, why didn't they require him to execute a distribution form? The email that we've been referring to refers to a telephone call where taxpayer requested the distribution telephonically. At that time, there was a play, you know, a tax disclaimer that was played by Merrill Lynch, and so it was done telephonically over the phone, and it must have been appropriate. Do you think that constitutes the distribution execution that a custodian is required to obtain when making a distribution? I do. That's my understanding based on the record. And Merrill Lynch, in fact, issued a 1099 reporting the distribution. Unless there are further questions, I'll reserve my time. All right. Thank you. Mr. Vandenheck or Ms. Vandenheck? Good morning, Your Honors. I'm Mary Vandenheck. I'm here for the petitioner and appellee in this case, Raymond McGaugh. I'm accompanied by co-counsel Joshua Dively. I'm going to respectfully ask that this court affirm the holding of the tax court in granting the motion for summary judgment in favor of the taxpayer. I'm just going to back up the discussion and talk about the tax court holding. This is a de novo review because it is here on motion for summary judgment. But my point is that the tax court got this case right. The tax court ruled, as a matter of law, that based on the undisputed material facts, the taxpayer did not receive a taxable distribution from his IRA because the taxpayer was not a literal payee or distributee. Taxpayer never had cash, check, stock, wire transfer ever in his hands. Commissioner acknowledges that there was no literal receipt. The significant distinguishing factor in this case from the other cases is that nothing in this case ever passed through the taxpayer's hand. This is simply the most significant factor. In the Ansera case, the taxpayer had requested a distribution. We also had the custodian wrongfully issue a 1099. But in ruling on that case, the tax court very specifically stated that if the IRA custodian funds had been paid directly to the stock issuer, there would have simply been an investment in the IRA and there would be no question as to whether there was a taxable distribution to the petitioner. That's the situation that we have in this case. There is no dispute as to any material facts in this case that go to the ruling that matters in this case. The only way that the commissioner can create a material dispute or factual dispute at all, actually, is to go to the conduit argument. So you'll notice the exclusive focus on the conduit and the lack of attention to the fact that there was no receipt. I wanted to ask you about the policy because in your brief, you fault the commissioner for not making the policy part of the record. But isn't the burden on the taxpayer to demonstrate that the notice of deficiency was incorrect? I think we still come back, and I think we've done that, by showing that there was no receipt. Well, the answer is yes, but you bet it. Yes, the answer is yes. So we just really in this case never get to the discussion of whether the taxpayer was a conduit. The commissioner seeks to go to constructive receipt. Again, we've acknowledged that there's no literal receipt. So let me ask you this. Without the policy in the record, how can we determine whether Mr. McGaugh had the right to direct the investment of funds in his IRA? So Mr. McGaugh was the owner and beneficiary of the IRA, and so the nature of IRAs themselves, there's some discussion in the briefs about self-directed or not self-directed, but under Section 408, if you are the owner and beneficiary of an IRA, you can call up, look, I can go online today to my IRA, and I can request a distribution by filling out the proper paperwork, or I can request an investment made. That's pretty standard with respect to all IRAs. So the commissioner is making the argument that because of that sort of basic ability of any owner or beneficiary to make an investment or take a distribution, that that's where there's unfettered discretion and control. And it's our position that what you have to look at is there's this moment when you make the phone call and say, okay, I want to take a distribution, in which case there's some proper paperwork and steps that are required. There might be some issues with what Merrill Lynch did, but not with what the taxpayer did. So the place you really have to look at is, okay, if you call up and you request an action with respect to your IRA, say I want a distribution or I want... Is there control at any point after you've made that request? And that's just not the case here. So the taxpayer never had any control, still doesn't have control. The taxpayer cannot do anything with a stock certificate. Commissioner makes a big deal out of the fact that the stock certificate got mailed to the taxpayer, which the taxpayer doesn't have, didn't receive. But if that stock certificate had been mailed to me, I'd have absolutely no control over the stock certificate. So FPFC, the stock issuer, is recognizing that Merrill Lynch, as the custodian of this IRA, is the owner, and will not do anything with the stock certificate absent a hold harmless from Merrill Lynch, as well as an affidavit of loss to the stock certificate. So there never was any control, and there's currently no control over this asset. Let me ask, if we do find constructive receipt, do you have the burden to show that this was not an impermissible investment? Do you agree with counsel in that respect? If you were to conclude that there was receipt, then we would have a burden to do that, but I think that's been established of the record. First of all, Merrill Lynch has another IRA for taxpayer, and that has the same stock in it. Commissioner actually makes the argument for me in his brief on page 17, noting that custodian is responsible for the policies. So there's thousands and thousands of policies about IRAs, and trying to say that the taxpayer is responsible for dealing with Merrill Lynch's policies is imposing a huge burden on every taxpayer who has an IRA to try and figure out what they can and cannot comply with. There is, of record, a wire transfer instruction that clearly shows that this initiated at Merrill Lynch from the taxpayer's IRA, and it says right on there that it was going to FPFC as beneficiary. That right there establishes if that was not a permissible investment, it would have been Merrill Lynch's responsibility not to have that go. So when Commissioner argues there's no agency, there's no authority, well, clearly Merrill Lynch acted on behalf of taxpayer's direction, so there is. Also, it's pretty clear that there is the email that you were discussing, and that does say we did not accept this because it wasn't here within 60 days. That would imply that it would have been accepted had it arrived within 60 days. So I do think we meet the burden on establishing those. Conduit by its nature is how did it get from here, and I just first don't think that we get there at all. There was no literal receipt. There's no constructive receipt. The conduit is, hey, how did it get from here to here? Well, it was never within the control in the hands of the taxpayer. A ruling in favor of the Commissioner in this case would have the effect of punishing taxpayers for the improper application of law and policies by the custodian. With all due respect to the Court, we respectfully request that you affirm the holding of the tax court. Thank you, Ms. Vandernack. How much time for Mr. Christensen? Thank you, Your Honor. Just two quick points. Under the regulations, it is the responsibility of the IRA custodian to establish policies and to direct the investment and disposition of property within the IRA. To be sure, a custodial agreement can confer certain rights on the account owner, but as the Court noted, that agreement is not in evidence in this case, in the record, and so we don't know what the provisions may have been in that respect. The inference from Merrill Lynch's refusal to purchase the stock in the first place is that Merrill Lynch clearly retained authority to restrict the investments that could be made through the IRA. The second point that I would make is that the mere fact that the stock was held in a separate retirement account owned by the taxpayer does not establish that the transaction in this case was a permissible transaction. Again, the inference from Merrill Lynch's refusal to purchase the stock and its subsequent refusal to accept the stock as an asset is that the investment was not a permissible investment. That's a reasonable interpretation. I don't think the record definitively answers, again, whether the investment was permissible under Merrill Lynch's policies. Again, the burden on summary judgment was the taxpayers. Unless there are further questions, that's all I have. All right. No further questions. Thank you. The case will be taken under advisement. Thank you, Counsel, for your fine briefs and argument. Third case of the day.